Courtney Lawellin
KARL KNUCHEL P.C.
116 West Callender Street
P.O. Box 953
Livingston, MT 59047
Telephone: (406) 222-0135
Facsimile: (406)222-8517
Email: courtney@knuchelpc.com

ATTORNEYS FOR PLAINTIFFS

**FILED**

MAY 23 2013

Clerk, U S District Court
District Of Montana
Billings

MONTANA SIXTH JUDICIAL DISTRICT COURT, PARK COUNTY, STATE OF MONTANA

DEBRA BICKFORD,

    Plaintiff,

v.

BNSF Railway Company;
Burlington Northern & Santa Fe
Railway Company; Burlington
Northern Railroad Company;
Burlington Northern, Inc.;
Northern Pacific Railroad
Company; Envirocon, Inc.,
Does 1 - 30,

    Defendants.

Cause No.: DV 10-91

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, by and through her undersigned Counsel, in accordance with Rule 7, Mont. R. Civ. P., and for her complaint alleges as follows:

**I. Parties**

1. Plaintiff Debra Bickford is currently a citizen of Bridger, Carbon County, Montana

2. Plaintiff, Debra Bickford was, prior to moving to Bridger, Montana, a citizen of Livingston, Park County Montana;

3. Defendant BNSF Railway Company is a business entity incorporated pursuant to the laws of the State of Delaware, with its principle place of business in the State of Texas. BNSF Railway Company is the successor to Defendants Burlington Northern & Santa Fe Railway Company, Burlington Northern Railroad Company, Burlington Northern, Inc., and Northern Pacific Railroad Company. BNSF Railway Company assumed the liabilities of these predecessor entities. (BNSF Railway Company and its predecessors are hereinafter referred to as "BNSF").

4. Defendant Envirocon, Inc., is a business entity incorporated pursuant to the laws of the State of Montana, with its principal place of business in the State of Montana.

5. Defendant David Smith is a citizen and resident of the State of Montana. Defendant David Smith is, and has been for a number of years, a regional manager of environmental remediation for BNSF. He is, and has been, responsible for environmental remediation on and around BNSF's properties in the region which includes the Livingston railyard. Defendant David Smith committed torts, as alleged herein, both individually and in his capacity as an employee and agent of BNSF.

10. Plaintiffs name Defendants Does 1 through 30, inclusively, fictitiously because Plaintiffs presently do not know whether they are individuals, legal business, governmental agencies or entities; or, their true names, residency or capacities. Once these become known to Plaintiffs, Plaintiffs will seek leave of the Court to amend this complaint and the claims and allegations made therein accordingly. Plaintiffs are of information and belief, and therefore allege, that these presently fictitiously named Defendants, or a number of them, exist and are legally responsible in some manner for the acts and/or omissions alleged in this complaint and that Plaintiff WAS damaged as a direct and proximate cause thereof.

### III. Jurisdiction and Venue

21. The District Court has original jurisdiction over these claims pursuant to Mont. Code Ann., §3-5-302.

22. Venue is proper in the Montana Sixth Judicial District Court, Park County Montana, pursuant to Mont. Code Ann., §§25-2-122, because one or more defendants engaged in tortuous conduct in Livingston, Park County, Montana, and because the acts and/or omissions complained of herein occurred in Park County, Montana,

### IV. General Allegations

23. Defendant BNSF owned and operated the railroad and ancillary facilities running through and within Livingston, Park County, Montana ("Livingston") for about eighty (80) years until about 1987, at which time it sold most of those facilities and the rail line to a corporation known as Montana Rail Link ("MRL").

24. Within its Livingston facilities, BNSF repaired and overhauled locomotives and for decades preceding its divestiture of the facilities, intentionally and knowingly or with maliciously reckless disregard of the consequences on the environment and to plaintiff's rights caused the discharge of alarming quantities of diesel fuel and other hydrocarbons into the soils, surface waters and groundwater in and near the City of Livingston.

25. In addition, BNSF intentionally and knowingly or with maliciously reckless disregard of the consequences on the environment and to plaintiffs' rights caused the discharge of huge quantities of toxic solvents, otherwise known as volatile organic compounds ("VOCs") including, but not limited to, trichloreothene, tetrachloroethene, dichloroethene and chlorobenzene, into the soils, surface waters and groundwater in and near the City of Livingston.

27. BNSF, intentionally and knowingly or with maliciously reckless disregard of the

consequences on the environment, to the plaintiff's person, and to plaintiff's' rights, dumped huge quantities of other hazardous materials including, but not limited to, lead and battery acids at or near its Livingston facilities, which materials have polluted the soils, surface waters and groundwater in and near the City of Livingston.

28. Many of the primary and secondary sources of the materials discharged, as set forth in the preceding paragraphs, still exist and continue to discharge liquids, gasses, and other toxic materials into the air, soils, surface waters and groundwater in and near the City of Livingston.

29. During or around 1991, BNSF made a conscious decision, predicated upon an internal cost benefit analysis, to abstain, to the extent possible, from containing, mitigating and cleaning up its hazardous waste site in Livingston as well as other sites discharging the materials described in the preceding paragraphs, opting instead, to allow said material to continue discharging in to the air, soils, surface waters and groundwater in and near the City of Livingston, thereby intentionally and wrongfully appropriating plaintiffs' real properties for its own use.

30. The materials released by BNSF, as set forth in the preceding paragraphs, are known to cause serious chronic and fatal diseases including, though not limited to, various forms of cancer, birth defects, pulmonary diseases, neurological diseases, and other diseases of the lungs and respiratory system.

31. Defendants, and each of them, had actual knowledge that the toxic and dangerous materials released by BNSF were extremely hazardous and that exposure thereto causes the diseases described in the preceding paragraph.

32. The highly toxic and abnormally dangerous substances released by BNSF, as described in

the preceding paragraphs, have migrated off the sites owned and/or operated by BNSF, and continue to do so

33. Defendants, during the normal course of business, unlawfully contaminated and polluted The plaintiff's real property and her person with abnormally toxic and dangerous substances, as these are described in the preceding paragraphs, thereby exposing her to risks to her health and safety.

34. Despite their knowledge thereof, Defendants, and each of them, have failed to fully and adequately disclose the scope of and dangers posed by the toxic and dangerous substances released by BNSF, to Plaintiff, her families or the public at large.

35. In or around 1988, BNSF entered into an "incentized" contract with its environmental consultant, Envirocon. Under the terms of the contract, BNSF and Envirocon agreed to limit BNSF's cleanup liability for contamination under and around the Livingston railyard to $15 million. At the time, BNSF and Envirocon were aware that a proper cleanup would cost substantially more. BNSF further agreed to share any "savings" resulting from a cleanup completed at less expense with Envirocon. Envirocon was therefore financially motivated to minimize the extent of the problem and advocate for an inexpensive (or nonexistent) cleanup plan.

35. In the face of Defendants' pattern of misinformation, concealment and/or understatement of the seriousness of BNSF's pollution, Plaintiffs are and have been unaware of the scope of the releases by BNSF, and the ensuant health risks, environmental harm, and diminution of real property values associated therewith.

36. Defendants negligently, maliciously, intentionally and/or with reckless disregard of

1  Plaintiff's rights, made affirmative misrepresentations and/or failed to disclose material facts to
2  Plaintiff.
3  37. Defendants, and each of them, knew the extent of the spread of the toxins and hazardous
4  materials released by BNSF, knew that BNSF's cleanup efforts, where taken, were, and continue
5  to be, inadequate to reduce the risks and damages to persons, including the plaintiff, knew the
6  hazards associated with the migration of those substances and failed to take reasonable steps to
7  contain and cleanup the contamination and to warn Plaintiff that her health, welfare, and property
8  value had been, and continue to be, placed in serious jeopardy due to the presence of the toxins
9  and hazardous materials, and her exposure thereto.
10 38. As a direct and proximate cause of Defendants' conduct, acts and omissions, as set forth
11 above and below, Plaintiff has suffered injuries, damages and losses, which include, but are not
12 limited to, personal injury, emotional distress, inconvenience, annoyance and discomfort.

### V. Causes Of Action

15 39. Plaintiff makes the following claims against Defendants:

### Count I (Negligence)

17 40. Plaintiff re-alleges all of the allegations made in all of the preceding paragraphs.
18 41. Defendants, and each of them, owed Plaintiff a duty to act with reasonable care and skill
19 in avoiding jeopardy to her health, property, welfare, and right to a clean environment.
20 42. Defendants, and each of them, breached their above-stated duty to Plaintiff in their
21 failure to act with reasonable care and skill in causing, failing to prevent, contributing to, and
22 failing to control, monitor, clean, or inform the plaintiff of the continuing release of toxic
23 substances and hazardous materials, as described in the preceding paragraphs, into plaintiff's
25

environment and onto her real property, the health effects of said toxic substance release, the said negligence continuing to the present day and likely to continue into the future.

43. As a direct and proximate cause of Defendants' breach of their duty to Plaintiff, as set forth in the preceding paragraphs, Plaintiff has suffered, and continues to suffer, injuries and damages to her person, loss of consortium, alteration and loss of course of life, a loss of wages and ability to fully perform her job, and continues to incur medical expenses, as alleged throughout this complaint.

### Count IV (Strict Liability)

54. Plaintiff realleges all of the allegations made in all of the preceding paragraphs.

55. BNSF was and is engaged in the storage, disposal, transportation, use and release of toxic substances and hazardous materials, as described in all of the preceding paragraphs, which individually and collectively constitute abnormally dangerous and ultra-hazardous activities. In releasing those substances and materials, and failing to contain the materials, BNSF created, and continues to create, unreasonably dangerous conditions causing damage to the Plaintiff.

56. The storage, disposal, transportation, release, and use of large quantities of fuel, fuel wastes, solvents, and toxic substances, and the operation of a locomotive refueling and maintenance facility immediately adjacent to a residential area is an abnormally dangerous and ultra hazardous activity in that:

A. There exists a high degree of risk of serious harm to the environment, persons, land, and chattels of others, including Plaintiff, which cannot be eliminated by the exercise of reasonable care;

B.     There is a strong likelihood that great harm will result from an escape of such fuel, fuel wastes, solvents and other toxic substances;

C.     The use, storage, disposal, and release of fuel, fuel wastes, solvents and other toxic substances in large quantities in close proximity to a residential neighborhood is not a matter of common usage such as would be carried on by the great mass of mankind or many people in the community;

D.     The manner in which BNSF used, stored, disposed of, and released such toxins at the Livingston facility is and was inappropriate; and,

E.     The value to BNSF of use, storage, disposal, and release of such large quantities of toxins adjacent to a residential area is outweighed by the likelihood of harm resulting therefrom.

56. As a direct and proximate cause of BNSF's abnormally dangerous and ultra hazardous activity, Plaintiff suffered, and continues to suffer, damage to her person for which BNSF is strictly liable in an amount to be adduced at trial hereon.

### Count X (Constructive Fraud-Deceit)

76. Plaintiff realleges all of the allegations made in all of the preceding paragraphs.

77. Defendants, and each of them, know and have known for decades, that BNSF's conduct caused toxic substances and hazardous materials, as described in the preceding paragraphs, to enter the air, soil, surface waters and groundwater of the City of Livingston and the surrounding area including, without limitation, the person and private property of Plaintiff.

78. Defendants had, and continue to have, a duty to fully and absolutely disclose to and warn

Plaintiff, on an ongoing basis, of the nature of, type of, extent of, scope of, private properties contaminated by and health risks posed by the toxic substances and hazardous materials released by BNSF.

79. Defendants, and each of them, breached, and continue to breach, their duties, as set forth in the preceding paragraph, and, further, have and continue to misrepresent, downplay and conceal material facts, thereby gaining an unfair advantage, by deception, over Plaintiff to her prejudice, all in violation of the common law of Montana.

80. As a direct and proximate cause of Defendants' fraudulent and unlawful acts and omissions, as alleged in this count, Plaintiff was compromised because she relied upon the misinformation disseminated by Defendants' to her detriment and she sustained damages to an extent and an in amount to be adduced at trial hereon.

## IV. COUNT III (EMOTIONAL DISTRESS)

24. Plaintiff herein re-alleges all of the allegations set forth in preceding paragraphs above;

25. That as a result of the actions of the Defendant, plaintiff suffered serious and sever emotional distress, inclusively as follows:

    a) The terror, anguish, agony, and torment plaintiff experienced as she was conscious of being unexpectedly stricken with cancer;

    b) The physical manifestations of plaintiff's emotional distress included shakes, hyperventilation, fear, anger, guilt, depression, anxiety, insomnia, loss of appetite, and a traumatized psyche, as well as dizziness, nausea, and uncontrollable and involuntary crying;

c) The suffering plaintiff has incurred and continues to suffer as a result of permanent physical injury attributable to defendants acts and omissions and the continuing anguish, directly and proximately caused by the defendant's actions;

26. As a result of the foregoing, Plaintiff, was damaged in an amount to be adduced at trial hereon;

## Count XII (Misconduct Warranting Punitive Damages)

84. Plaintiff re-alleges all of the allegations made in all of the preceding paragraphs.

85. Defendants' conduct, acts and omissions, all as set forth throughout all of the preceding paragraphs constitutes conscious and intentional disregard for the health, well being, real property and rights of Plaintiff. Indeed, the conduct of Defendants' is so intentional, fraudulent, malicious, wanton, willful and egregious so as to shock the conscience and present an affront to societal mores and interests that is unfathomable. Defendants, and each of them, have acted with cold and calculated indifference to the rights of the plaintiff and interests of a community that has become one of the largest toxic substance and hazardous dump sites in the United States.

86. Defendants have deliberately proceeded to act in conscious and intentional disregard for and indifference to the harm and the high probability of injury and harm to the Plaintiff. The Defendants have also made misrepresentations of fact with knowledge of their falsity and have concealed material facts with the purpose of depriving the Plaintiff of her legal rights and otherwise causing her damage as alleged herein.

86. Defendants explicitly misrepresented the nature and extent of contamination resulting from BNSF's operations in Livingston in numerous public documents and in the press. Defendants also misrepresented the extent to which they had and would investigate and

cleanup the contamination, and the extent to which the contamination would affect the Plaintiff. Defendants were aware that their characterizations of the contamination affecting the Plaintiff were false. Defendants were also aware that their representations regarding investigation and cleanup of the site were false. Defendants misrepresentations concerning an important matter of public safety were material, particularly to Plaintiff who was exposed to the contamination stemming from the Livingston railyard. Defendants intended for members of the public, including the Plaintiff, to rely on their false representations by feeling secure that their health and property were not threatened. The Plaintiffs did in fact rely on the Defendants' misrepresentations and had no means of learning the falsity of Defendants' representations. The Plaintiff, as a resident of the community and based on her individual exposure, had a right to rely on Defendants affirmative representations. Plaintiff suffered harm through reliance on Defendants' misrepresentations.

86. In light of all of the foregoing and as a result thereof, Defendants are liable for punitive damages to the extent provided for by Montana law. Plaintiff requests an award of punitive damages sufficient to punish Defendants, and each of them, and to discourage others similarly situated from embarking in such future misconduct.

## VI. Damages

87. As a direct and proximate result of the Defendants' wrongful and unlawful acts and omissions as herein alleged, Plaintiff has suffered, and will continue to suffer and/or is reasonably certain to suffer, the following harm and/or damages:

    A.    Personal Injury;

    B.    Emotional Distress;

  C. Incidental and consequential damages;

  D. Annoyance, inconvenience and discomfort over the loss and prospective loss of economic opportunities, ways of life and other legal rights;

  E. Expenses for investigation; and,

  F. Other damages to be proven at trial.

88. Article II, §3 of the Montana Constitution guarantees all persons in Montana the inalienable, fundamental right to a clean and healthful environment. Defendants' conduct has violated the Plaintiff's constitutional rights, and Plaintiff is entitled to damages for full restoration of their property as necessary to protect these rights. Plaintiffs are further entitled to cleanup on BNSF's former property to the extent necessary to protect and prevent further harm to their property.

## VI. Prayer For Relief

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

1. Damages in a reasonable amount to compensate Plaintiff for all harm she has suffered as a result of the Defendants' conduct;

2. Damages for investigation;

4. Damages for loss of consortium, alteration and loss of course of life, a loss of wages and ability to fully perform her job, and medical expenses;

5. Damages for emotional distress, and other legal rights;

6. Incidental and consequential damages;

8. Punitive and exemplary damages in an amount sufficient to punish Defendants and deter them and others similarly situated from engaging in similar wrongdoing;

11. Costs and disbursements incurred herein; and

12. Such other and further relief as the Court deems just and equitable.

Respectfully Submitted and Dated this 12th day of May 2010.

By: *(signature)*
Attorneys For The Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury.

Dated this 12th day of May 2010.

By: *(signature)*
Attorneys For The Plaintiff

COMPLAINT - 13